Argued and submitted September 9, 1985, reversed and remanded April 16, reconsideration denied June 20, petition for review allowed July 15, 1986 (301 Or 338)

# FAZZOLARI,
*Appellant,*

*v.*

# PORTLAND SCHOOL DISTRICT NO. 1J,
*Respondent.*

## (A8212-07615; CA A34098)

717 P2d 1210

Willard E. Merkel, Portland, argued the cause for appellant. With him on the brief were Galton, Popick & Scott, Portland.

William B. Crow, Portland, argued the cause for respondent. With him on the brief were Margaret Fiorino and Miller, Nash, Wiener, Hager & Carlsen, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Plaintiff was assaulted and raped on the grounds of Franklin High School, where she was a student, on May 21, 1982, at approximately 6:50 a.m., after being dropped off by her mother. She was approaching the open school building when the attack occurred. Plaintiff sued the school district to recover for her physical and emotional injuries. She claimed defendant was negligent in failing to supervise or provide adequate security, in failing to warn students after a prior similar assault and in failing to maintain the property in a way which would decrease the risk of assaults on students. Defendant moved for a directed verdict after plaintiff had presented her case. The trial court granted the motion, and plaintiff appeals. She also assigns error to the trial court's exclusion of evidence consisting of a summary of police reports of criminal activity at the school.

Plaintiff's evidence established that defendant's employes began to open the doors to the school building each day at 6 a.m., and that all doors were opened by 6:45 or 7 a.m. Classes began at 8:15, but some students would arrive before classes began to participate in activities, study or talk. Plaintiff's mother routinely dropped her off at 6:50 a.m., and plaintiff would study, chat or work on signs for the rally squad before classes began. The school had no rules concerning students' time of arrival, and monitors began patrolling the halls at 8:15.

On May 6, 1982, 15 days before the attack on plaintiff, a woman delivering newspapers to the school was attacked and raped on the same school's property at approximately 4:30 a.m. A school custodian and the vice-principal testified that they had learned of that attack on the day that it occurred. The vice-principal also testified that he had mentioned the attack to the principal on the same day. The principal denied that he knew of that rape before the date on which plaintiff was attacked. However, on the day the attack on the delivery woman occurred, the school directed that the location and time of the paper drop be changed. The school did not warn students after the attack or change any security measures existing before the attack on plaintiff.

The trial court granted defendant's motion for a directed verdict, ruling that defendant could not be held liable because the attack on plaintiff was not reasonably foreseeable

as a matter of law. The court found that, because the earlier rape was of a non-student and had occurred before the school building was open, it did not "create foreseeability." Plaintiff contends that there was sufficient evidence from which a jury could conclude that the attack on plaintiff was reasonably foreseeable and that defendant was negligent in failing to take reasonable precautions to reduce the possibility of attacks on its students.

■        Defendant's duty to take reasonable precautions to protect plaintiff from reasonably foreseeable criminal acts derives from its position as a possessor of land held open to the public and from its special relationship with the students who attend defendant's school.[1] The existence of the duty is a

---

[1] Restatement (Second) Torts, § 344 (1965), provides:

"A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

"(a)  discover that such acts are being done or are likely to be done, or

"(b)  give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it."

*Brown v. J.C. Penney Co.,* 297 Or 695, 687 P2d 811 (1984), applied this rule to affirm the liability of the owners and operators of a shopping center to a plaintiff who was attacked in the defendants' parking lot. *Torres v. United States Nat. Bank,* 65 Or App 207, 670 P2d 230, *rev den* 296 Or 237 (1983), holds that a bank owes its customers the duty described in § 344 to take reasonable precautions to protect them from criminal attacks while they are using the bank's night depository on its premises. Although *Torres* rests on the use of the term "business invitees" in section 344, a school stands in a sufficiently analogous relationship to its students that it owes the same duty. *Peterson v. San Francisco Community College Dist.,* 36 Cal 3d 799, 205 Cal Rptr 842, 685 P2d 1193 (1984), applied section 344 to hold a community college district liable to a student who paid a fee to park on campus and was attacked in the parking lot area. In view of the *Petersen* court's reliance on *Jesik v. Maricopa County Com. College Dist.,* 125 Ariz 543, 611 P2d 547 (1980), we do not think that the fact that the student in *Peterson* paid a parking fee was necessary to that decision.

Restatement (Second) Torts § 315 (1965) provides:

"There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

"(a)  a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

"(b)  a special relation exists between the actor and the other which gives to the other a right to protection."

*Dailey v. Los Angeles Unified Sch. Dist.,* 2 Cal 3d 741, 87 Cal Rptr 376, 470 P2d 360 (1970), held that a school district owes its students a duty to protect them from the

question of law. *Dewey v. A. F. Klaveness & Co.,* 233 Or 515, 524, 379 P2d 560 (1963) (O'Connell, J., specially concurring). Other issues regarding defendant's negligence, such as the foreseeability of the risk of harm and the adequacy of a defendant's conduct, generally present questions of fact, unless the facts are so extreme that the court can decide the issues as a matter of law.

*Stewart v. Jefferson Plywood Co.,* 255 Or 603, 607-10, P2d 783 (1970), addresses the issue of when a judge may remove a negligence case from the jury:

> "The issue of the defendant's negligence or the plaintiff's contributory negligence is frequently withdrawn from the jury and is resolved by the trial court or by this court as a matter of law. The jury is given a wide leeway in deciding whether the conduct in question falls above or below the standard of reasonable conduct deemed to have been set by the community. The court intervenes only when it can say that the actor's conduct clearly meets the standard or clearly falls below it.
>
> "* * * * *
>
> "This idea of limiting liability to that which can be anticipated is formulated into the foreseeability test for negligence, which states that one is negligent only if he, as an ordinary reasonable person, ought reasonably to foresee that he will expose another to an unreasonable risk of harm. Foreseeability is an element of fault; the community deems a person to be at fault only when the injury caused by him is one which could have been anticipated because there was a reasonable likelihood that it could happen.
>
> "Thus fault, as the term is usually understood, is not associated with conduct which causes harm through the concatenation of highly unusual circumstances. If, in our appraisal of the community's conception of fault, we find that the conduct in question clearly falls outside the conception, we are charged with the duty of withdrawing the issue from the jury.
>
> "The specific question before us is, then, whether plaintiff's injury and the manner of its occurrence was so highly unusual that we can say as a matter of law that a reasonable

---

*intentional acts of third parties. We agree that a school district owes its students a duty to take reasonable precautions to protect them from reasonably foreseeable criminal acts.*

man, making an inventory of the possibilities of harm which his conduct might produce, would not have reasonably expected the injury to occur. Stated in another way, the question is whether the circumstances are out of the range within which a jury could determine that the injury was reasonably foreseeable." (Footnotes omitted.)

■    We conclude that a jury could find that the attack on plaintiff was reasonably foreseeable because of defendant's knowledge of the May 6 rape. The facts that the other rape had occurred some two hours earlier in the morning and was not of a student are not so different as to remove the attack on plaintiff from the realm of the reasonably foreseeable.

■    We also think that a jury could reasonably conclude that defendant's conduct fell below the community standard of reasonable conduct. After the May 6 rape, defendant took steps to protect the newspaper deliverer by changing the time and location of delivery. It was aware of the danger and the need for caution. It would not be unreasonable to expect defendant to inform its students of that incident so that they could take steps for their own safety. We conclude that the evidence presented a jury question as to defendant's negligence on the question of the failure to warn and that the trial court erred in directing a verdict for defendant.[2]

Because we reverse for a new trial, we consider plaintiff's second assignment, in which she contends that the trial court erred in denying admission of a summary of police reports of criminal activity at the school. The exhibit compiles 18 offenses reported between April 21, 1978, and April 12, 1982. Sixteen are listed as ''assault—not aggravated—unspecified,'' and two are described as aggravated assault, one with a knife and the other with a gun. Defendant objected on the ground that the evidence was irrelevant, because the reported incidents were remote in time and of a different nature from the attack on plaintiff. Defendant also objected on the ground that there was no evidence that the reported incidents had occurred on school grounds.

_____

[2] Two allegations of plaintiff's complaint claimed that defendant was negligent in failing to trim or remove certain bushes near the location where plaintiff was assaulted, which could have concealed an assailant or an attack. Plaintiff did not supply any evidence that her assailant concealed himself behind the bushes or that the attack occurred under their cover. Thus plaintiff failed to prove that defendant's conduct in this respect caused her injury.

The trial court could reasonably have concluded that the exhibit contained some irrelevant material, because of the temporal remoteness or nature of the crimes reported. Plaintiff asserts that *Brown v. J.C. Penney Co., supra,* n 1, controls. That case stands for the proposition that, if

> "* * * the exhibit contains both relevant and irrelevant matter, however, and the objection is to the entire exhibit on the asserted ground of want of relevancy, the objection is insufficient to preserve a claim of error. * * * One who objects to an exhibit on the ground that it is not to be received because it contains irrelevant material must object to those specific parts, and an objection to the entire exhibit, if it contains relevant matter, will 'avail nothing on appeal.' * * *" 297 Or at 705.

■    This case is in a different posture from *Brown,* where the trial court had admitted an exhibit which contained irrelevant material. Here, plaintiff attacks the exclusion of an exhibit which concededly contains some irrelevant material. In this circumstance, plaintiff had the burden of excising the irrelevant portions of the exhibit to preserve the claimed error.

Reversed and remanded.

**BUTTLER, P. J.,** dissenting.

The question is whether a school district has a duty to protect its students from criminal acts of third persons over whom the district has no control, one and one-half hours before school starts. That question is one of law for the court. The majority answers it by stating that defendant had a duty because of "its position as a possessor of land held open to the public and from its special relationship with the students who attend defendant's school," 78 Or App at 611, relying on Restatement (Second) Torts § 344 (1965). Because I disagree, I dissent.

That section of the Restatement, by its terms, is applicable to businesses, and the cases that have relied on it have involved business establishments and business invitees. *See Brown v. J.C. Penney Co.,* 297 Or 695, 688 P2d 811 (1984); *Uihlein v. Albertson's, Inc.,* 282 Or 631, 580 P2d 1014 (1978); *Whelchel v. Strangways,* 275 Or 297, 550 P2d 1228 (1976); *Torres v. United States Nat. Bank,* 65 Or App 207, 670 P2d

230, *rev den* 296 Or 237 (1983). The majority would extend the duty imposed on private businesses to public schools simply by stating that the relationship between a public school and its students is analogous to that between a business and its customers. 78 Or App at 611 n 1. However, I do not believe that public schools are analogous to private business establishments, which exist to earn a profit. Public schools exist because the Oregon Constitution requires the legislature to establish them. Art VIII, § 3. Their purpose is not to make money and, on a strictly economic basis, they cost the taxpayers money to operate. Their function is a loftier one that is considered essential in this democratic society—to educate all of the educable persons of school age within the district. The benefit is to the students and to society in general, not to the public school.

The apparent rationale of the Restatement and the cases following it is that one who possesses land for business purposes is under a greater duty to those who are invited to enter for a purpose connected with business dealings with the possessor. Restatement (Second) Torts, § 332(3), *comments a* and *e*;[1] § 344. In other words, the possessor has an economic

---

[1]Restatement (Second) Torts, § 332(3), states:

"A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land."

*Comment a* states:

" 'Invitee' is a word of art, with a special meaning in the law. This meaning is more limited than that of 'invitation' in the popular sense, and not all of those who are invited to enter upon land are invitees. A social guest may be cordially invited, and strongly urged to come, but he is not an invitee. (See § 330, Comment h.) Invitees are limited to those persons who enter or remain on land upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make them safe for their reception. Such persons fall generally into two classes: (1) those who enter as members of the public for a purpose for which the land is held open to the public; and (2) those who enter for a purpose connected with the business of the possessor. The second class are sometimes called business visitors; and a business visitor is merely one kind of invitee. There are many visitors, such as customers in shops, who may be placed in either class."

*Comment e* states:

"Business visitors fall into two classes. The first class includes persons who are invited to come upon the land for a purpose connected with the business for which the land is held open to the public, as where a person enters a shop to make a purchase, or to look at goods on display. As is stated in §§ 344 and 359, there are occasional instances where a possessor may be under a greater duty to those who enter as invited members of the public. * * *"

motive in possessing the land and in inviting patrons to enter. Under § 344, that greater duty may include requiring the possessor to use reasonable care to protect business visitors from intentionally harmful acts of third persons. Because those economic factors are lacking here, that rationale for extending the duty of the possessor of land is inapplicable.

Concededly, a public school has such a relationship with its students that it has a duty to use reasonable care to protect them from reasonably foreseeable harm that arises while they are engaged in recognized school activities, on or off the school premises. *Morris v. Douglas Co. S.D. No. 9,* 241 Or 23, 403 P2d 775 (1965); *Grant v. Lake Oswego Sch. Dist. No. 7,* 15 Or App 325, 515 P2d 947 (1973), *rev den* (1974); *Summers v. Milwaukie Union H.S.,* 4 Or App 596, 481 P2d 369 (1971). That is, there exists the general duty to exercise due care during the times that the student relationship exists. I know of no Oregon cases that have imposed that duty when the injury occurs during a time when school is not in session and the student is not engaged in school activities. *See Sanderlin v. Central School Dist. 13J,* 6 Or App 429, 487 P2d 1399, *rev den* (1971) (a school district does not have a duty to deliver each child to his home in such a manner that he would not be required to cross a street).

Plaintiff was raped after she was dropped off at school at 6:50 a.m. for the convenience of her mother and herself, about one and one-half hours before school started. If we are to impose the greater duty on defendant that has been imposed on possessors of business premises, we need to break new ground. Accordingly, we must start afresh with the policy considerations that go into deciding whether a legal duty will be imposed. The question is one of law for the court. *Dewey v. A. F. Klaveness & Co.,* 233 Or 515, 379 P2d 560 (1963). Some of the factors to be considered are mentioned in *Brennen v. City of Eugene,* 285 Or 401, 591 P2d 719 (1979), and *Mezyk v. National Repossessions,* 241 Or 333, 405 P2d 840 (1965). There are others, as well.[2]

---

[2]In *Vu v. Singer Co.,* 538 F Supp 26, 29 (ND Cal 1981), the court listed these factors:

"(1) [F]oreseeability of harm to plaintiff; (2) degree of certainty that plaintiff suffered injury; (3) closeness of connection between defendant's conduct and injury suffered; (4) moral blame attached to defendant's conduct; (5) policy of

First, there are the administrative and economic factors. Presumably, defendant could adopt and enforce rules prohibiting students from arriving before a given time before school started. A rule would be easy enough to adopt, although it might cause inconvenience to many students and parents and could exacerbate the problem if students who arrived early were compelled to wait outside. Enforcement of the rule would require either additional personnel or longer hours for existing employees; it takes one custodian about 45 minutes to open all of the doors. As things stood at the time, defendant was precluded by the collective bargaining agreement from requiring teachers to be on duty before 8:15 a.m., at which time the halls were patrolled. Given the economic plight of many school districts, the wisdom of the court's imposing this additional economic and administrative burden on them is highly questionable. In other words, the extent of the burden it would impose on defendant and the consequences to the community of doing so may be disproportionate to the increase in protection afforded the students. *See* Prosser and Keeton, *Torts,* 359, § 53 (5th ed 1984).

Second, we should consider how closely connected defendant's conduct was to the injury suffered, not to resolve causation, which would not be relevant in the absence of duty, but to evaluate the burden of imposing a duty against the likelihood of avoiding the injury by doing so. If we impose a duty here, defendant, in order to avoid the risk of breaching that duty, might consider it necessary to remove all shrubs on its 34-acre site that are capable of concealing a felon. It might also feel obligated to light all areas where shadows might conceal an assailant in the dark and to provide security patrols to cover the entire school grounds. Although plaintiff alleged that defendant breached its duty in some of those respects, the majority agrees that those allegations were properly withdrawn from jury consideration, because there was no causal connection between them and the assault in this case. However, the facts in another case might make that connection.

The duty might also be breached by a failure to give a

preventing future harm; (6) extent of burden to defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach; and (7) availability, costs, and prevalence of insurance for the risk involved."

warning adequate to enable the students to avoid the harm. An *adequate* warning in this kind of case, compared to one where the danger consists of a dangerous physical condition of the premises, is difficult to imagine. Although the burden of requiring a warning would be slight, it seems to me that the likelihood of avoiding the harm during daylight by informing the students of the rape of a non-student on the school grounds at 4 a.m., when it was dark, 15 days earlier is not very great. In other words, as I view our function in deciding whether defendant had a duty to plaintiff to protect her from the harm she suffered, we consider whether the supposed duty to inform was sufficiently closely connected to the injury that we should, as a matter of policy, impose that duty on defendant in this case. I would not think so.

I assume that insurance is available to protect defendant from its liability for torts. *See Brennen v. City of Eugene, supra.* However, if we impose a duty on defendant, as the majority would, the availability of insurance would be problematical and, at best, it would be very expensive, even though there is a statutory limit to a public body's liability in tort actions. ORS 30.270. Again, the economic burden on school districts weighs against imposing on them the kind of duty involved here.

Although the majority does not, in considering the duty issue, discuss whether the injury to plaintiff was reasonably foreseeable, that factor is one of the considerations in resolving the policy question. The majority does say that, given defendant's knowledge of the earlier rape, a jury could find that the attack on plaintiff was reasonably foreseeable, citing *Stewart v. Jefferson Plywood Co.*, 255 Or 603, 469 P2d 783 (1970). In deciding that defendant had a duty to plaintiff, we would have to conclude that defendant could have reasonably foreseen[3] that plaintiff would be raped on school premises during daylight hours, because there had been a rape of a non-student on its premises several weeks earlier before daylight. Because I think that that conclusion is highly questionable, I

---

[3]The majority quotes from *Stewart v. Jefferson Plywood Co., supra,* and relies on that language to conclude that plaintiff's injury was reasonably foreseeable. Although I do not quarrel with that reliance, I am not sure whether that case requires that there be a "reasonable likelihood" of harm or whether it requires only that in "making an inventory of the possibilities of harm which his conduct might produce," a person would not have expected the injury to occur. It would make a difference.

would hold that, for the purpose of imposing a duty, it was not reasonably foreseeable. Of course, a rape of a female student was possible, either on or off the school grounds, but whether it was any more likely to occur on the school premises because the earlier rape had occurred on the premises, rather than off but immediately adjacent to them, is too conjectural to impose a duty on defendant.

The unfortunate fact is that numerous crimes, including assaults and rapes, occur all over Portland, and it is foreseeable that they will occur and could just as well occur on school premises as anywhere else. Should we impose a higher duty on defendant than we would impose on a city or county?

Considering all of the factors discussed, I would decide that, as a matter of policy, defendant did not have a duty to protect plaintiff from the criminal act of a third person that occurred one and one-half hours before school started when plaintiff was not engaged in, or going to school early to engage in, a recognized school activity.

Accordingly, I would affirm and, therefore, respectfully dissent.