Argued and submitted November 14, 1985, affirmed February 12, reconsideration denied March 28, petition for review allowed April 22, 1986 (301 Or 76)

# DONACA,
*Appellant,*

*v.*

# CURRY COUNTY,
*Respondent.*

(84-1587; CA A34548)

714 P2d 265

Linda M. Seluzicki, Portland, argued the cause for appellant. With her on the brief were Steven K. Blackhurst, Portland, and Lindsay, Hart, Neil & Weigler, Portland.

I. Franklin Hunsaker, Portland, argued the cause for respondent. With him on the briefs were Ronald E. Bailey, Portland, Douglas R. Andres, Portland, and Bullivant, Houser, Bailey, Hanna, Pendergrass, Hoffman, O'Connell & Goyak, Portland.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

This is a negligence action. Plaintiff appeals the trial court's dismissal of his complaint for failure to state ultimate facts sufficient to constitute a claim for relief. ORCP 21. We affirm.

In June, 1983, plaintiff was riding a motorcycle north on Squaw Valley Road near the intersection of Onyx Lane in Curry County. Squaw Valley Road is a public highway; Onyx Lane is a private road. He was injured when a car driven by Gary Curl pulled out of Onyx Lane onto Squaw Valley Road and collided with the motorcycle. Tall grass on the county's right-of-way beside Squaw Valley Road obscured Curl's view, and he was unable to see plaintiff approaching on his motorcycle. In earlier years, the county had cut the grass along that road, but it had not done so for some time immediately before the accident.

Plaintiff's complaint alleges that the county was negligent

"in failing to keep and maintain the grass on the side of the roadway at a height that would not obstruct the vision of drivers at that intersection when the county knew or in the exercise of reasonable care should have known that the height of the grass was at such a level so as to obscure the vision of motorists at that intersection."

The county moved to dismiss pursuant to ORCP 21. The trial court concluded that the county owed no duty to plaintiff and dismissed his complaint with prejudice.

Plaintiff contends that the trial court erred in concluding that the county owed him no duty to trim the vegetation to a height that would not obstruct the view of motorists approaching the intersection. He argues that the county was negligent *per se,* because it has a statutory duty to ensure visibility at intersections involving county roads and rights-of-way. ORS 368.256.[1] Plaintiff did not rely on that purported

---

[1] ORS 368.256 provides, in relevant part:

"(1)    Except as authorized by the county governing body, an owner or lawful occupant of land shall not allow:

"* * * * *

"(b)    Any structure, tree, drainage way, soil deposit or other natural or man-

statutory duty in the trial court. Except in special circumstances, matters not presented to the trial court will not be considered on appeal. *Travelers Indemn. v. American Ins.,* 278 Or 193, 199, 563 P2d 684 (1977); *Davis v. Tyee Industries, Inc.,* 58 Or App 292, 297, 648 P2d 388 (1982) *aff'd* 295 Or 467, 668 P2d 1186 (1983). There are no special circumstances here. Therefore, we will not consider plaintiff's argument.

Plaintiff next contends that the county has a common law duty to ensure visibility at intersections. He argues that that duty is found in the county's duties of reasonable care and to maintain its roads. ORS 368.251 *et seq.* He argues further that that duty is recognized in Oregon case law, although it is not explicitly discussed. He relies on *Daugherty v. State Highway Comm.,* 270 Or 144, 526 P2d 1005 (1974); *Hall v. State,* 43 Or App 325, 602 P2d 1104 (1979), *aff'd* 290 Or 19, 619 P2d 256 (1980); *Moody v. Lane County,* 36 Or App 231, 584 P2d 335 (1978); *Lanning v. State Hwy Comm.,* 15 Or App 310, 515 P2d 1355 (1973); and *Leonard v. Jackson,* 6 Or App 613, 488 P2d 838 (1971). Although those cases do recognize a duty of reasonable care on the part of the state highway commission in the performance of ministerial acts of maintenance, they do not even reach, much less resolve, the issue of duty presented in this case.

■ Plaintiff contends that the issue here is one of fact. He argues that the question is whether the failure to cut back the vegetation amounted to a breach of the duty of reasonable care owed to a traveller on a county road. He relies on *Hurst v. Board of Com'rs of Pulaski County,* ___ Ind App ___, 446 NE2d 347 (1983). However, that case was reversed on appeal. The Indiana Supreme Court held that "the question of whether a common law duty exists is a matter of law and not of fact." *Hurst v. Board of Com'rs of Pulaski County,* ___ Ind ___, 476 NE2d 832, 833 (1985). The court held that the trial court had both the power and the obligation to determine whether the county had a duty to remove vegetation at the intersection. We agree with that holding.

■ Oregon has no case law dealing with the duty of a county to maintain visibility at points where *private* roads

made thing on that land to present a danger to or create a hazard for the public traveling on a public road or facilities within the right of way of the public road by obstructing, hanging over or otherwise encroaching or threatening to encroach in any manner on a public road that is under county jurisdiction."

intersect county roads. Because this is a case of first impression, we look to other jurisdictions to see how they have resolved similar claims. In the past, courts routinely denied liability for the failure of governmental entities to trim or remove foliage and vegetation along public roads and intersections. *See Annot.*, 42 ALR2d 817 (1955).[2]

More recently, some jurisdictions have found liability when vegetation obscures a motorist's view. Several jurisdictions have imposed liability on local governments on the basis of statutes or ordinances which, expressly or impliedly, impose a duty to reduce vegetation that blocks the view of motorists using public roadways.[3] Because plaintiff's challenge is not based on a statute, we find the analysis in those cases unpersuasive in this case. Other jurisdictions have imposed liability without reliance on a statute or ordinance. Several cases involved only public roadways and controlled intersections in which the claim was that the view of or from a traffic control device was obscured by vegetation.[4] Plaintiff

---

[2] Superseded by *Annot.*, 22 ALR 4th 624 (1983).

[3] *See De La Rosa v. City of San Bernadino,* 16 Cal App 3d 739, 94 Cal Rptr 175 (1971)(statutory duty to prevent dangerous conditions on public property); *Bakity v. County of Riverside,* 12 Cal App 3d 24, 90 Cal Rptr 541 (1970) (statutory duty to prevent dangerous conditions on public property); *Dundum v. City of San Mateo,* 167 Cal App 2d 593, 334 P2d 968 (1959) (statutory duty to prevent dangerous or defective conditions on public property); *Bentley v. Saunemin Township,* 83 Ill 2d 10, 413 NE2d 1242 (1980) (statute requiring township commissioner to maintain roads in reasonably safe condition); *First Nat'l Bank v. City of Aurora,* 71 Ill 2d 1, 373 NE2d 1326 (1978) (statute providing that owner or occupier of land abutting a roadway shall not maintain any vegetation tending to obstruct the view of motorists); *Evans v. Allstate Ins. Co.,* 340 So 2d 634 (La App 1976) (ordinance requiring landowners to remove noxious vegetation and providing for methods for city to enforce ordinance); *Granai v. State,* 206 Misc 984, 136 NYS2d 238, *aff'd,* 286 App Div 1145, 146 NYS2d 709 (1954) (concealed stop sign did not comply with state's vehicular and traffic statute); *Croniser v. State,* 195 Misc 576, 90 NYS2d 658 (1949) (traffic statutes required state, in exercising reasonable care, to warn motorists of unsafe conditions); *Royce v. Smith,* 68 Ohio St 2d 106, 429 NE2d 134 (1981) (statute required local authorities to prevent the obscuring of traffic control devices by foliage); *Lorig v. Mission,* 629 SW2d 699 (Tex 1982) (statute provided for recovery for bad condition of a road sign obscured by tree branches); *Phinney v. Seattle,* 34 Wash 2d 330, 208 P2d 879 (1949) (statute held to have indicated legislative intent that if counties failed to erect and maintain signs to provide for safe traffic flow, county would be liable); *Fanning v. Laramie,* 402 P2d 460 (Wyo 1965) (legislative mandate to erect and maintain signs). Of those cases, all but three involved controlled intersections and an allegation that the local government failed to maintain a clear view of a traffic control signal or of the intersecting roadways from the signal.

[4] *See Coppedge v. Columbus,* 134 Ga App 5, 213 SE2d 144 (1975) (stop sign concealed by foliage); *Ballard v. Jones,* 21 Ill App 3d 496, 316 NE2d 281 (1974) (stop

cites *Sierra-Melendez v. Brown, supra,* n 4, and *First Nat'l Bank v. City of Aurora, supra,* n 3, in support of his argument. However, both of those cases involved only public roads and controlled intersections. Because there is a stronger *rationale* in favor of liability when the governmental entity has undertaken to control the intersection or highway, we do not find the reasoning in those cases persuasive in this case.[5]

A number of jurisdictions continue to hold that local governments do not have a duty to cut back vegetation along public roads. Several courts have held that there is no duty to trim weeds and grass,[6] while others have held that vegetation is not a defect in the road.[7] Still other courts have based denial

---

sign concealed by foliage); *Sierra-Melendez v. Brown,* 410 So 2d 258 (La App 1982) (plaintiff's view from stop sign obstructed by shrubs on private property); *Stewart v. Lewis,* 292 So 2d 303 (La App 1974) (plaintiff's view from stop sign obstructed by vegetation permitted to grow along approaches to highway); *Sanchez v. Lippincott,* 89 App Div 2d 372, 455 NYS2d 457 (1982) (stop sign and plaintiff's visibility from intersection obstructed by foliage); *Hulett v. State,* 4 App Div 2d 806, 164 NYS2d 929 (1957) (curve sign near intersection obscured by foliage); *Jazek v. City of Midland,* 605 SW2d 544 (Tex 1980) (plaintiff's view from stop sign obstructed by foliage; city had prior notice of problem); *Naker v. Town of Trenton,* 62 Wis 2d 654, 215 NW2d 38, *on rehg,* 62 Wis 2d 660, 217 NW2d 665 (1974) (stop sign concealed by foliage).

[5] We have discovered only two cases which hold local governments liable which were not based on a statute and did not involve controlled intersections. *Griffin v. State of New York,* 24 Misc 2d 815, 205 NYS2d 470, *aff'd,* 14 App Div 825, 218 NYS2d 524 (1960), involved several dangerous conditions, one of which was a row of trees blocking the view of the true road, which led a driver to believe that a road continued, when in fact what the driver saw from the top of a hill was an intersecting dirt road. The state was held liable, not for failing to cut the trees, but for failing to erect and maintain adequate warning signs. That case involved only public roads. In *Oroz v. Board of County Com'rs,* 575 P2d 1155 (Wyo 1978), the court abolished the doctrine of governmental immunity and remanded the case for a trial on the issue of negligence. There was no discussion of the question of duty and no discussion of public policy considerations. The only argument made by the county was based on immunity. That case also involved only public roads. We do not find either case persuasive.

[6] *See Slavin v. City of Tucson,* 17 Ariz App 16, 495 P2d 141 (1972); *Mercado v. City of Pasadena,* 176 Cal App 2d 28, 1 Cal Rptr 134 (1959), *overruled on other grounds Teall v. City of Cudahy,* 60 Cal 2d 431, 434, 34 Cal Rptr 869, 386 P2d 493 (1963); *Boylan v. Martindale,* 103 Ill App 2d 335, 431 NE2d 62 (1982); *Toumberlin v. Haas,* 236 Kan 138, 689 P2d 808 (1984); *Savarese v. Bye,* 398 So 2d 1276 (La App 1981); *Pepitone v. State Farm Mut Auto Ins Co.,* 369 So 2d 267, (La App) *rev den,* 371 So 2d 1343 (La 1979); *McGough v. Edmonds,* 1 Wash App 164, 460 P2d 302 (1969).

[7] *See Heller v. Brown,* 29 Conn Supp 365, 288 A2d 906 (1971); *Phillips v. State Highway Comm.,* 146 Kan 112, 68 P2d 1087 (1937); *Owens v. Town of Booneville,* 206 Miss 345, 40 So 2d 158 (1949); *Johnson v. Township of Southampton,* 157 NJ Super 518, 385 A2d 260, *rev den,* 77 NJ 485, 391 A2d 499 (1978); *Royce v. Smith,* 68 Ohio St 2d 106, 429 NE2d 134 (1981); *Stanley v. S. C. State Hwy. Dept.,* 249 SC 230, 153 SE2d 687 (1976), *overruled on other grounds McCall v. Batson,* 285 SC 243, 329 SE2d 741 (1985); *Barton v. King County,* 18 Wash 2d 573, 139 P2d 1019 (1943).

of liability on the absence of a statute imposing such a duty.[8]

Curry County has advanced a major public policy argument against imposing such a duty: the cost. This argument was recognized in *Barton v. King County, supra,* n 7, where the Washington Supreme Court stated that

"[t]o allow [such a claim] would be to hold, literally, that thousands of county road intersections are inherently dangerous. To so hold would impose imponderable responsibility upon counties." 18 Wash 2d at 576.

In *Walker v. Bignell,* 100 Wis 2d 256, 265, 301 NW2d 447 (1981), the Wisconsin Supreme Court stated:

"Whether liability should be imposed in a given situation is a question of policy. * * * [E]ven where the chain of causation between conduct and harm is complete and direct, recovery may be denied on the grounds that:

"* * * * *

" '* * * allowance of recovery would place too unreasonable a burden on the negligent tort-feasor. * * *'[*Coffey v. Milwaukee,* 74 Wisc 2d 526, 536, 247 NW2d 132 (1976)]."

The court declined to impose a duty to trim vegetation in order to assure motorist visibility:

"Instead we prefer to declare directly that, as a matter of public policy, municipalities should not be exposed to common law liability under the circumstances present in this case. Exposure to such liability would, we feel, place an unreasonable and unmanageable burden upon municipalities such as the defendant herein, not only in terms of keeping areas adjacent to every highway intersection clear of visual obstructions at whatever intervals are necessitated by the vicissitudes of Wisconsin's climate, but also in terms of the potential for significant financial liability owing to the unfortunate propensity of motorists to have intersection accidents. In addition, because the height and density of vegetation would become a factor in nearly every intersection accident case, municipalities would inevitably be drawn into considerably more litigation, with its attendant costs and demands. To require these defendants to do battle with roadside vegetation

---

[8] *Boyle v. City of Phoenix,* 115 Ariz 106, 563 P2d 905 (1977); *Hidalgo v. Cochise County,* 13 Ariz App 27, 474 P2d 34 (1970); *Bohm v. Racette,* 118 Kan 670, 236 P 811 (1925); *Sylor v. Irwin,* 62 Misc 2d 469, 308 NYS2d 937 (1970); *Western Pennsylvania National Bank v. Ross,* 345 F2d 525 (6th Cir 1965) (applying Ohio Law).

under penalty of liability for common law negligence would be to place upon them a burden they should not be made to bear." 100 Wis 2d at 266.[9]

In reversing the Court of Appeals in *Hurst v. Board of Com'rs of Pulaski County, supra,* the Indiana Supreme Court quoted *Walker* and was persuaded by its public policy arguments against finding a duty.

In each of the cited cases, the collision took place at the intersection of two public roads. This case involves the intersection of a public road and a *private* road. The public policy arguments against the imposition of liability are even stronger here. It would impose an unreasonable burden on local governments to require them to cut back vegetation that might impair the visibility of any motorist at every place where the public road is intersected by a private road or driveway. There may be several thousand such private roads and driveways in each county, some used more often than others. It would be a nearly impossible task for county governments to determine and maintain visibility at every such intersection. We hold that there is no such duty without a statute.

Affirmed.

---

[9] The case was remanded for a determination of whether the facts would bring the case within a state statute.