Argued and submitted June 3, 1986, the decisions of the Court of Appeals and circuit court reversed and case remanded to circuit court for further proceedings March 17, 1987

# DONACA,
*Petitioner on Review,*

*v.*

# CURRY COUNTY,
*Respondent on Review.*

## (TC 84-1587; CA A34548; SC S32701)

734 P2d 1339

Linda M. Seluzicki, Portland, argued the cause for petitioner on review.

I. Franklin Hunsaker, Portland, argued the cause for respondent on review.

Before Peterson, Chief Justice, and Linde, Campbell, Carson and Jones, Justices.

LINDE, J.

**LINDE, J.**

Plaintiff appealed the dismissal of his complaint seeking damages from Curry County for personal injuries sustained in a highway accident, which the circuit court held not to state ultimate facts sufficient to constitute a claim for relief. ORCP 21A.(8). The complaint alleged, in essence, that plaintiff, operating a motorcycle on a county road, collided with an automobile entering the road from a private roadway at an intersection which was obscured by tall grass growing on the right-of-way, that the defendant county was responsible for maintaining the grass and had done so in prior years, and that "[d]efendant knew or in the exercise of reasonable care should have known that the height of the grass was at such a level so as to obscure the vision of motorists at that intersection" and was negligent in failing to keep the grass below such a level.

The Court of Appeals affirmed the dismissal of the complaint on grounds that the potential costs of controlling vegetation on the right-of-way so as to maintain visibility at intersections between county roads and private roads provided a "public policy argument against imposing such a duty" on the county. *Donaca v. Curry Co.,* 77 Or App 677, 683-84, 714 P2d 265 (1986). We reverse the Court of Appeals and remand the case to the circuit court.

■ In *Fazzolari v. Portland School Dist. No. 1J,* 303 Or 1, 734 P2d 1326 (1987), also decided today, we have discussed the purely formal role of "duty" or "no duty" in common-law negligence cases. "Duty" plays no affirmative part in a plaintiff's case that does not invoke an obligation arising from or defined by a status, relationship, statute, or other legal source outside negligence law itself; and, unless the plaintiff invokes such a specific legal source, "no duty" is only a defendant's way of denying legal liability for conduct that might be found in fact to have unreasonably caused a foreseeable risk of harm to an interest of the kind for which the plaintiff claims damages. *Fazzolari, supra,* 303 Or at 15. *See also Kimbler v. Stillwell,* 303 Or 23, 26, 734 P2d 1344 (1987).

"No duty" defenses are argued broadly or narrowly, as the occasion demands. Sometimes "no duty" excludes whole categories of claimants or of claims, for instance economic or psychic loss caused by physical injury to another

person.[1] At other times "no duty" refers narrowly to an aspect of the particular circumstances before the court. This often amounts to a claim that no rational factfinder could find defendant's conduct unreasonably to pose a foreseeable risk to the plaintiff but does not really assert any categorical rule.[2] The *Fazzolari* and *Kimbler* cases decided today are of this second type. In the present case, the Court of Appeals accepted a "no duty" argument of the first kind. The court categorically excluded any duty to trim or remove vegetation on county roads that obscures a motorist's view of intersections with private roads from the county's general responsibility for the safety of public roads.

The ambiguous and ultimately unhelpful role of "duty" in reaching a conclusion on this issue was discussed in a Wisconsin decision on which defendant and the Court of Appeals relied, *Walker v. Bignell*, 100 Wis 2d 256, 301 NW2d 447 (1981). The Wisconsin Supreme Court noted that the defendant county, under circumstances much like the present, had successfully argued in the lower court that "under the Wisconsin formulation of the elements of a cause of action in negligence, *i.e.,* duty, breach, causation, and damage, the plaintiffs' action is defeated [at] the threshold for want of a duty to breach." *Id.* at 451-52. The supreme court continued:

> "This court on a number of occasions has discussed the somewhat elusive concept of 'duty.' [In two earlier opinions] this court repeated the words of Dean Prosser:
>
> > " '*There is a duty if the court says there is a duty; the law, like the constitution, is what we make it. Duty is only a word with which we state our conclusion that there is or*

---

[1] *See, e.g., Ore-Ida Foods v. Indian Head,* 290 Or 909, 916-19, 627 P2d 469 (1980)(rejecting claim of employer forced to pay worker's compensation benefits as result of defendant's negligence); *Norwest v. Presbyterian Intercommunity Hosp.,* 293 Or 543, 560-66, 652 P2d 318 (1982)(rejecting child's claim based on permanent disability of mother caused by negligent defendant).

[2] *Compare, e.g., Palsgraf v. Long Island R.R. Co.,* 248 NY 339, 162 NE 99 (1928) ("the risk reasonably to be perceived defines the duty to be obeyed," excluding claim of plaintiff on station platform injured by scales dislodged by explosion when a passenger who was negligently pushed by railroad employees dropped a package of fireworks), *with Stewart v. Jefferson Plywood Co.,* 255 Or 603, 607, 469 P2d 783 (1970)(jury could find that risk created by negligently caused fire extended to a volunteer firefighter's injury from falling through the roof of someone else's nearby building; no mention of "duty").

*is not to be liability; it necessarily begs the essential question.'* "[3] (Emphasis in original; citations omitted.)

*Id.* at 452. After observing that the parties before it had used "duty" to refer either to an affirmative duty of municipalities to cut vegetation at intersections or to a general common-law duty of reasonable care to avoid causing foreseeable risk of harm to another, the Wisconsin court concluded:

"We find it unnecessary to ground our decision relative to the defendants' ultimate liability upon the somewhat nebulous concept of duty even though the parties to this review, the courts below, and many decisions from other jurisdictions have used the term. Our cases do not indicate that municipalities are held to an affirmative duty to cut roadside vegetation in order to assure motorist visibility, and we are disinclined to declare the existence of such a duty. * * * Neither do we consider whether injury to motorists caused by poor visibility occasioned by uncut vegetation at highway intersections is within the realm of a foreseeable risk of harm so as to trigger in the defendants a duty of reasonable care to prevent such harm. * * * Instead we prefer to declare directly that, as a matter of public policy, municipalities should not be exposed to common law liability under the circumstances present in this case. Exposure to such liability would, we feel, place an unreasonable and unmanageable burden upon municipalities such as the defendants herein, not only in terms of keeping areas adjacent to every highway intersection clear of visual obstructions at whatever intervals are necessitated by the vicissitudes of Wisconsin's climate, but also in terms of the potential for significant financial liability owing to the unfortunate propensity of motorists to have intersection accidents. In addition, because the height and density of vegetation would become a factor in nearly every intersection accident case, municipalities would inevitably be drawn into considerably more litigation, with its attendant costs and demands. To require these defendants to do battle with roadside vegetation under penalty of liability for common law negligence would be to place upon them a burden they should not be made to bear." (Citations omitted.)

*Id.* at 453. The court then remanded the case for reconsideration of possible liability under a statute that the parties apparently had overlooked.

There is nothing new in the observation that "duty"

---

[3] The quotation is from Prosser, *Palsgraf Revisited,* 52 Mich L Rev 1, 15 (1953).

is only a conclusion embodying policies making a defendant civilly liable for failure to protect a plaintiff against an injury. *See Fazzolari, supra,* 303 Or at 15 734 P2d 1326; *Mezyk v. National Repossessions,* 241 Or 333, 336, 405 P2d 840 (1965). This is self-evident when "duty" is used in its primary and meaningful sense of obligations imposed or defined by sources of law external to the common law of negligence itself. *See, e.g., Cain v. Rijken,* 300 Or 706, 717 P2d 140 (1986)(statutory duty of "community mental health provider"); *Brennen v. City of Eugene,* 285 Or 401, 591 P2d 719 (1979)(city clerk's duty to apply an ordinance); *McEvoy v. Helikson,* 277 Or 781, 562 P2d 540 (1977)(lawyer's duty under a court order). And, of course, negligence law itself like all law is a part of a state's public policy. Some courts and some theorists therefore have taken the further step that in the absence of statutory sources of public policy, a court should articulate and justify rules of law in terms of policy (described a bit self-servingly as "public" or "social" policy), in other words, adopt a legislative mode of making policy rather than a judicial search for policy made by others or for the implications of existing principles.[4]

---

[4] *See, e.g.,* Green, *The Duty Problem In Negligence Cases* (pts. 1 & 2), 28 Colum L Rev 1014, 1034 (1928), 29 Colum L Rev 255 (1929)(judicial policy determined by the "administrative factor," *i.e.,* institutional concerns of the courts, and the "ethical or moral," "economic," "prophylactic or preventive" and "justice" factors), *reprinted in* Green, Judge & Jury 38, 76-77 (1930); Winfield, *Public Policy and the English Common Law,* 42 Harv L Rev 76 (1928); Green, *Tort Law Public Law in Disguise,* 38 Tex L Rev 1 (1959); Symmons, *The Duty of Care in Negligence: Recently Expressed Policy Elements* (pts. 1 & 2), 34 Mod L Rev 394, 528 (1971); Prosser & Keeton, The Law of Torts 15-20, § 3 (5th ed 1984). *See also* the approach taken by Presiding Judge Buttler in his dissent in *Fazzolari v. Portland School Dist. No. 1J,* 78 Or App 608, 614, 717 P2d 1210 (1986), where he urged the court to "start afresh with the policy considerations that go into deciding whether a legal duty will be imposed." 78 Or App at 616, 717 P2d 1210. Judge Buttler developed those policy considerations from a set of "factors" enumerated in *Vu v. Singer Co.,* 538 F Supp 26, 29 (ND Cal 1981), which in turn relied on *Tarasoff v. Regents of the University of California,* 17 Cal 3d 425, 435, 131 Cal Rptr 14, 551 P2d 334 (1976).

Of a similar list of policy considerations recited in *Commercial Standard Ins. Co. v. Bank of America,* 57 Cal App 3d 241, 248, 129 Cal Rptr 91 (1976), a commentator writes:

"* * * [O]ne wonders at the court's ingenuousness in assuming its capability of assessing and reconciling these partly inconsistent aims and functions. The court's apparent unawareness of the complexity and the antithetical nature of the listed elements of liability reveals the inherent limits of the judicial process. It seems a practical impossibility for a judge, with or without a jury, to evaluate these factors in any significant sense on a case-by-case basis." (Footnotes omitted.)

England, *The System Builders: A Critical Appraisal of Modern American Tort*

This is what the Court of Appeals, quoting *Walker v. Bignell, supra,* did in this case.

We do not follow the quoted approach of the Wisconsin court, as we have not embraced freewheeling judicial "policy declarations" in other cases. In recent years, for instance, this court has declined to explain tort liability for injuries from defective products by a "loss-spreading" rationale, *Wights v. Staff Jennings, Inc.,* 241 Or 301, 309-10, 405 P2d 624 (1965), to decide for or against intrafamily immunity from negligence liability by assessing the defendant's potential conflict of interest when his or her liability is covered by insurance, *Winn v. Gilroy,* 296 Or 718, 728, 681 P2d 776 (1984), or to consider either the use of liability insurance or possible burdens on the courts as factors in defining substantive claims and duties, *Norwest v. Presbyterian Intercommunity Hosp.,* 293 Or 543, 652 P2d 318 (1982).[5]

Similarly, we do not immunize counties from whatever responsibility for visibility of intersections they otherwise might have in order to relieve them of the cost of defending against unsuccessful claims. Nor are counties

---

*Theory,* 9 J Legal Studies 27, 29 (1980).

Also, this court has observed:

"There is another reason not to explain the court's understanding of the existing state of the law by the court's views of desirable social policy. Legislators, unlike judges, may change the law at any time without any demonstration of error, illogic, or incongruity, simply upon changes in personnel and in the political agenda. That is what elections and legislative debates are for. One day's unsuccessful proponents or opponents of a social policy may renew the campaign the next day to change the law. They should be free to debate the merits untrammeled by a court's arguments why its view of the existing law represents the better policy. * * *"

*Norwest v. Presbyterian Intercommunity Hosp.,* 293 Or 543, 553, 652 P2d 318 (1982).

[5] *Norwest* stated that

" [a] person's liability in our law still remains the same whether or not he has liability insurance; properly, the provision and cost of such insurance varies with potential liability under the law, not the law with the cost of insurance.

"Nor are such contentions about the child's loss commensurable with concerns about the processes of litigation. * * * Courts exist to serve whatever rights people have, Or Const art I, § 10; it is not for them to weigh or 'balance' their own institutional concerns against the merits of such a right." (Footnote omitted.)

293 Or at 552, 652 P2d 318. *Norwest* itself presented a close question of the implications to be drawn from legislative changes in the wrongful death statute. *See id.* at 571-73 (Lent, C.J., dissenting).

immune from liability that owners of private roads would face under identical circumstances merely because precautions are costly. The Oregon Tort Claims Act squarely enacts the contrary policy toward both defenses.

The Court of Appeals let an argument against the cost of a "duty to control vegetation at intersections" lead it into a categorical "no duty" rule for uncontrolled intersections between public and private roads though not all roads. The rule illustrates the pitfalls of cost-based judicial generalizations. The risk of collisions at obstructed intersections and the cost of clearing the obstructions are empirical data. They can be expected to differ substantially from one location to another. One county road may carry many times the traffic of another. One private road may take many cars onto a county road daily, or during some seasons, more than some intersecting public roads do; another may hardly ever be used. Risks of collision will differ accordingly. The cost of controlling vegetation may differ from climate to climate, from county to county and from road to road.[6] Of course there are no data of this kind in the record; the case was decided on plaintiff's complaint alone. The "no-duty" rule stated by the Court of Appeals will be taken to govern county roads throughout Oregon, regardless of particular circumstances; but although it asserts a "public policy" reason, in fact the court rests its rule on an analysis of decisions of other courts around the country. *Donaca v. Curry Co., supra,* 77 Or App at 681, 714 P2d 265.[7]

If there is an indication of legislative policy toward the problem of obstructed visibility at road intersections, it is found in ORS 368.256, which provides:

"(1)   Except as authorized by the county governing body, an owner or lawful occupant of land shall not allow:

"* * * * *

---

[6] Only vegetation growing on the county's right-of-way is at issue here. The county does not suggest that the cost of eliminating that vegetation (or liability for failure to do so) should fall on the owner of the private road.

[7] Recent cases are collected in an annotation to *Walker v. Bignell,* 100 Wis 2d 256, 301 NW2d 447 (1981), in 22 ALR 4th 624, 640 (1983). As the Court of Appeals noted, the decisions distinguish cases relying on statutes or ordinances that impose a duty to reduce vegetation on public roadways, cases involving vegetation obscuring uncontrolled intersections, and cases where vegetation obscures traffic signs.

> "(b)  Any structure, tree, drainage way, soil deposit or other natural or man-made thing on that land to present a danger to or create a hazard for the public traveling on a public road or facilities within the right of way of the public road by obstructing, hanging over or otherwise encroaching or threatening to encroach in any manner on a public road that is under county jurisdiction."

The county disputes plaintiff's claim that the county itself is meant to be included among landowners who may not allow obstructing plants or structures to endanger travel, and we agree that the statute does not literally cover this case.[8] The statute does, however, show a public policy placing safety of the traveling public over the cost of removing dangerous obstructions, if that is the issue.

■       But the issue need not be seen in the all-or-nothing terms in which the Court of Appeals (and the Wisconsin court) cast it. As we have observed above and in *Fazzolari v. Portland School Dist. No. 1J, supra,* 303 Or at 16, 734 P2d 1326, broadly phrased arguments over "duty" in common-law negligence tend to turn into a disputed rule of law what properly is a determination of the ordinary issues of negligence liability: whether defendant's conduct caused a foreseeable kind of harm to an interest protected against that kind of negligent invasion, and whether the conduct creating the risk of that kind of harm was unreasonable under the circumstances. The existence and magnitude of the risk at the intersection in question bear on the foreseeability of harm. The feasibility and cost of avoiding the risk bear on the reasonableness of defendant's conduct. Both clearly are empirical questions. We do not mean that they must in every case be submitted to a jury; in an extreme case a court can decide that no reasonable factfinder could find the risk foreseeable or

---

[8] Unlike the Wisconsin Supreme Court which decided *Walker v. Bignell, supra,* n 7, by reference to a statute found for the first time when the case was before that court, the Court of Appeals declined to consider plaintiff's invocation of ORS 368.256 on the ground that plaintiff had not based his complaint on a statutory duty. But a possible statutory basis for a claim is part of the law, not an "ultimate fact" to be pleaded. ORCP 18A. We distinguish between an *issue* raised for the first time on appeal and a theory or source of law available to support a party's position, a distinction that may have been obscured by the reference to "theories" in *Stanfield v. Laccoarce,* 284 Or 651, 659, 588 P2d 1271 (1978). *See Cooper v. Eugene Sch. Dist. No. 4J,* 301 Or 358, 369 n 12, 723 P2d 298 (1986); *Nearing v. Weaver,* 295 Or 702, 708, 670 P2d 137 (1983).

defendant's conduct to have fallen below acceptable standards. Nor do these questions invariably require an evidentiary trial, although they concern facts; some facts are within judicial notice, provided that an opportunity is afforded to show the contrary. OEC 201(b) - 201(e).

■ This case, however, never got to the stage of summary judgment upon opposing affidavits. It did not even get as far as an answer. In this case, as in *Kimbler v. Stillwell, supra,* the circuit court held that the complaint did not state ultimate facts sufficient to constitute a claim for relief, in other words, that the county would not be liable no matter how foreseeable (or actually known) a danger was created by uncontrolled grass obscuring the intersection and how easy it might have been for the county to remove that danger or warn against it. The Court of Appeals affirmed the dismissal of the complaint on grounds that the county was immune from liability—had "no duty"—under any circumstances encompassed within the complaint. That was erroneous.

The decision of the Court of Appeals is reversed and the case is remanded to the circuit court for further proceedings.