967 F.2d 588
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Melvin MORRILL, Plaintiff-Appellant,
v.
GENERAL MOTORS CORPORATION, CHEVROLET MOTOR DIVISION,
Defendant-Appellee.
 No. 91-35130.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 4, 1992.*
Decided May 29, 1992.
 
 1
 Before WALLACE, Chief Judge, GOODWIN, Circuit Judge, and CROCKER**, District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Appellant Melvin Morrill challenges the directed verdict in favor of General Motors Corporation in this diversity action for damages for products liability and negligence.
 
 I. REDIRECT EXAMINATION:
 
 4
 The scope and extent of redirect examination rests within the sound judicial discretion of the magistrate judge. We will not reverse a magistrate judge's determination unless an abuse of discretion is shown. Chapman v. United States, 346 F.2d 383, 388 (9th Cir.), cert. denied, 382 U.S. 909 (1965).
 
 
 5
 Morrill contends that the magistrate judge erred in denying him the opportunity on redirect examination to have his expert clarify statements made during cross-examination. On cross-examination, counsel for GM had asked Eichler whether he believed the door seal was manufactured defectively. Eichler responded, "the door seal or the entire vehicle with the door seal installed?" Morrill alleges that this response demonstrates that Eichler believed the water seepage resulted from the defective door seal in conjunction with the size of the door opening. Morrill says it was an abuse of discretion to refuse his request to reopen so Eichler could clarify his statement.
 
 
 6
 Morrill relies on Copes v. United States, 345 F.2d 723, 725 n. 2 (D.C.Cir.1964), and Raney v. Honeywell, 540 F.2d 932, 936 (8th Cir.1976), which found redirect examination to be proper for the purpose of explaining testimony elicited during cross-examination. No one argues the point for which these cases are cited. It clearly lies within the district court's authority to permit such examination. The cases do not assert that redirect examination for the purpose of explaining testimony is mandatory. The magistrate judge found that Eichler had testified extensively as to which portion of the vehicle he believed was defective. The denial of the tendered testimony, which was an afterthought and largely cumulative in character, does not amount to an abuse of discretion.
 
 II. NEGLIGENCE
 
 7
 A directed verdict is proper when the evidence permits only one reasonable conclusion as to the verdict. Peterson v. Kennedy, 771 F.2d 1244, 1256 (9th Cir.1985). Our role is the same as the district court's. The Jeanery, Inc. v. James Jeans, Inc., 849 F.2d 1148, 1151 (9th Cir.1988). On appeal of a directed verdict, the nonmoving party is entitled to the advantage of "all the reasonable inferences that may be drawn from [the] evidence" and testimony presented. Chrisholm Bros. Farm Equip. Co. v. Int'l Harvester Co., 498 F.2d 1137, 1140 (9th Cir.), cert. denied, 419 U.S. 1023 (1974) (emphasis in original).
 
 
 8
 Morrill asserts that GM is liable for negligently designing and manufacturing the truck. Under Oregon law, in order to successfully assert a negligence claim, a plaintiff must present evidence showing that: (1) the defendant's conduct caused a foreseeable kind of harm to an interest protected against that kind of negligent invasion; (2) the defendant's conduct was a substantial factor in causing the plaintiff's injury; and (3) the conduct creating the risk of that kind of harm was unreasonable under the circumstances. Donaca v. Curry County, 734 P.2d 1339, 1344 (Or.1987). Morrill failed to establish any of the required elements for a negligence cause of action.
 
 
 9
 A. Foreseeable harm.
 
 
 10
 "The existence and magnitude of the risk ... bear on the foreseeability of the harm". Donaca at 1344. Morrill asserts that a jury could infer from the evidence presented that the risk of a consumer being burned was quite large. He refers to the fact that Mrs. Morrill found the floor board to be hot to the touch on November 2, 1986. However, Morrill previously explained that he was burned because his diabetic condition prevented him from feeling the excessive temperatures in his feet. An ordinary consumer would have felt the extreme temperature, as Mrs. Morrill did, and withdrawn his feet to avoid being burned. Thus, the risk of an ordinary passenger receiving a severe burn is quite low. GM had no reason to foresee that a passenger could be severely burned because of a defective door seal or an improvident choice of insulation.
 
 
 11
 B. Causation.
 
 
 12
 Morrill asserts that GM negligently designed the truck by using insulation which became less effective when wet. Morrill's case was necessarily premised on an assumption that there was water under the floor board on November 1, 1986. However, no evidence of weather conditions or other possible sources of water were presented. If Oregon courts are to take judicial notice of Oregon's abundance of rain during the fall and winter, the party should have requested it.
 
 
 13
 Larry Morrill, who claimed to find rust and moisture underneath the floor mat, initially inspected the truck several months after Morrill was burned and after the GM representative inspected the truck and found no evidence of water or excessive heat. Larry's discovery of "moisture" does not indicate that the floor board was wet enough to cause the insulation to deteriorate at the time the injury occurred. While Vicki Morrill testified that water was present above the floor mat prior to November 1, she does not claim that water was present beneath the floor board.
 
 
 14
 Morrill asserts that the door seal deteriorated over time, which allowed water to enter the vehicle. He claims that from the negligent design of the door seal a jury could infer that water entered the passenger cab. However, Morrill is not entitled to an inference of the existence of a defect at the time of manufacture when he has not demonstrated that the product was unchanged between the time of the manufacture and the time of the injury. See Quirk v. Ross, 476 P.2d 559, 563 (Or.1970). Morrill's expert found a defect in the truck's door seal in 1989, six years and 100,000 miles after the truck left GM's possession. The magistrate properly determined that this evidence does not rationally support a verdict in Morrill's favor.
 
 
 15
 C. Unreasonable conduct.
 
 
 16
 In negligence actions, the court looks to the reasonableness of the manufacturer's actions in designing and selling the article. Phillips v. Kimwood Machine Company, 525 P.2d 1033, 1037 (Or.1974) ( citing Roach v. Kononen/Ford Motor Co., 525 P.2d 125 (Or.1975)). Morrill did not present any evidence suggesting that GM unreasonably designed the truck or unreasonably used insulation which became ineffective when wet.
 
 
 17
 In Oregon, the plaintiff must prove that there was available an "alternative, safer design, practicable under the circumstances." Wilson v. Piper Aircraft Corp., 577 P.2d 1322, 1326 (Or.1978). Eichler did not indicate that an alternative door design or window seal existed which would have prevented the alleged water leakage. Eichler testified that he believed GM could have provided sufficient insulation, but made no mention of the availability of an alternative insulation material, the cost, the added safety a different insulation material would provide, or the technological practicality of implementing an alternative insulation material. This evidence fails to meet the Wilson requirements of a safer, practicable design. Id. The magistrate properly determined that Morrill failed to present sufficient evidence to maintain a negligent design or negligent manufacturing cause of action.
 
 III. STRICT LIABILITY
 
 18
 Under Oregon law, the elements of a products liability claim are codified in Or.Rev.Stat. § 30.920 as follows:
 
 
 19
 (1) One who sells or leases any product in a defective condition unreasonably dangerous to the user or consumer ... is subject to liability for physical harm ... caused by that condition, if:
 
 
 20
 (a) The seller or lessor is engaged in the business of selling or leasing such a product; and
 
 
 21
 (b) The product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold or leased.
 
 
 22
 ....................................................
 
 
 23
 ............................
 
 
 24
 * * *
 
 
 25
 (3) It is the intent of the Legislative Assembly that [subsection 1] ... shall be construed in accordance with the Restatement (Second) of Torts sec. 402A, Comments a to m (1965).
 
 
 26
 The Restatement (Second) of Torts § 402A, comment i provides:
 
 
 27
 [t]he rule stated in this Section applies only where the defective condition of the product makes it unreasonably dangerous to the user.... The article sold must be dangerous to an extent beyond that which is contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.
 
 
 28
 2 Restatement (Second) of Torts, § 402A (1965). A determination of whether the product is unreasonably dangerous depends on the danger presented to the ordinary consumer, and the expectation of that consumer. Ewen v. McLean Trucking Co., 706 P.2d 929, 933 (1985).
 
 
 29
 Morrill asserts that the product was unreasonably dangerous because an ordinary consumer would consider the product as presenting an unacceptable risk of injury. The testimony of Vicki and Larry Morrill refute this assertion. Both experienced high temperatures in the passenger seat prior to November 1, yet neither had considered the condition sufficiently dangerous to require vehicle servicing. Moreover, Mrs. Morrill was not burned when she rode in the truck on the day after her husband was burned. She was willing to ride in the truck despite the alleged temperature problems. This indicates that she did not consider the truck to present an unacceptable risk of injury.
 
 
 30
 In determining whether the danger was unacceptable, the courts balance the utility of the risk against the magnitude of the risk, looking at:
 
 
 31
 (1) The usefulness and desirability of the product--its utility to the user and the public as a whole.
 
 
 32
 (2) The safety aspects of the product--the likelihood that it will cause injury, and the probable seriousness of the injury.
 
 
 33
 (3) The availability of a substitute product which would meet the same need and not be unsafe.
 
 
 34
 (4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.
 
 
 35
 (5) The user's ability to avoid danger by the exercise of care in the use of the product.
 
 
 36
 (6) The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product, or the existence of suitable warnings or instructions.
 
 
 37
 (7) The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance.
 
 
 38
 Phillips, 525 P.2d at 1039 n. 13.
 
 
 39
 Substantial evidence supports the magistrate judge's findings pertinent to this inquiry. For instance, an ordinary consumer would have avoided a serious burn by adjusting his feet away from the high temperatures, as Mrs. Morrill, Vicki and Larry did. The evidence demonstrates that the likelihood of an ordinary passenger being seriously injured is slight. No evidence of a feasible alternative door seal material or vehicle design which could have eliminated the alleged water leakage was presented. Morrill failed to name an alternative insulation material which GM could have used to replace the current insulation. Based on the available evidence, the magistrate determined that the truck design and insulation used were not, either separately or together, unreasonably dangerous. The magistrate properly determined that Morrill failed to meet the requirements for recovering under a theory of strict liability.
 
 
 40
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 Honorable M.D. Crocker, United States District Judge for the Eastern District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3